UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

─────────────────────────────── X

SHS ACK, LLC,

      Plaintiff,

      v.

STUART SILBERBERG,

      Defendant.

─────────────────────────────── X

Case No. 1:21-cv-12121-AK

**OPPOSITION TO MOTION OF NON-PARTY SARAH WEGMAN, ESQ.'S
MOTION TO QUASH SUBPOENA OR FOR PROTECTIVE ORDER**

Plaintiff, SHS ACK, LLC ("Plaintiff" or "SHS") hereby opposes Non-Party Sarah Wegman Esq.'s ("Wegman") *Motion to Quash Subpoena or for Protective Order* [ECF No. 36] ("Motion"). In short, the Motion should be denied in its entirety, as Wegman is undoubtedly an important percipient fact witness in this case, as she was counsel to the Borrowers[1] in connection with, *inter alia*, negotiating the Omnibus Amendments to the subject Loans at issue in this matter. Furthermore, despite Wegman's unfounded statements to the contrary, Plaintiff does not seek any privileged information through its subpoena. For these reasons, and as forth set forth herein, the Motion should be denied *in toto*.

**PRELIMINARY STATEMENT**

The Motion should be denied because Attorney Wegman's refusal to sit for a deposition in this case is merely part and parcel with the Defendant and his insiders' orchestrated attempts to stonewall all of SHS' efforts to undertake fulsome discovery into the claims and defenses

---

[1] Unless otherwise stated herein, Plaintiff hereby incorporates all definitions and abbreviations contained in the Complaint with full force and effect as if fully reiterated herein.

raised in this case. The Court should give short shrift to Mr. Silberberg and Attorney Wegman's contradictory invocations of attorney client privilege as a basis for frustrating SHS' discovery efforts as neither has, nor would they ever be able to, meet their burden for shielding highly relevant discovery from SHS.

Through this action, SHS seeks to enforce the terms of certain personal guarantees entered into by the defendant Stuart Silberberg ("Mr. Silberberg") in favor of SHS' predecessor in interest, HarborOne Bank. Instead of complying with the simple and straight forward terms of his personal guarantees and curing the Borrowers' numerous defaults under the Loans, Mr. Silberberg has failed and refused to do so for many years. As a result, the balance due and owing under the Guarantees is now in excess of $19,000,000.00.

Plaintiff seeks the deposition of Wegman, who represented the Borrowers in connection with, amongst other things, negotiating the Omnibus Amendments to the Loan with HarborOne Bank in early 2020. Ms. Wegman's testimony is both relevant and critical to this case, because Mr. Silberberg has raised numerous affirmative defenses to the claims asserted against him herein, including duress, unconscionability, and alleged wrongful conduct on the part of SHS' predecessor, HarborOne Bank and Mr. Silberberg's own counsel. It strains credulity that Attorney Wegman, who was counsel to the Borrowers in connection with the loan transaction at issue herein, would have no relevant non-privileged information concerning the claims and defenses asserted in this case. Specifically, because Attorney Wegman was counsel of record for the principal Borrowers and negotiated the amendments to the underlying loan documents with HarborOne Bank she is will undoubtedly have highly relevant information concerning the purported nefarious conduct that Mr. Silberberg has alleged as the basis for his shirking his obligations under the Guarantees. Furthermore, Attorney Wegman likely has relevant

information concerning the facts and circumstances precipitating the amendments to the Loan Documents in 2020, i.e., the Borrowers' numerous defaults thereunder.

Thus, despite Wegman's blanket claims of the risk of invading the attorney-client privilege, SHS ***does not seek any privileged testimony*** from Wegman. Troublingly, Wegman fails to specify whose privilege she is even invoking, whether it is the Borrowers, Silberberg, or perhaps Ajax, the other guarantor, or how and why those parties object to her being deposed in this case. Importantly in this regard, as Wegman admits in her Affidavit filed with her Motion, Silberberg had separate personal counsel, and thus was adverse to Wegman's clients, the Borrowers, for purposes of negotiating the Omnibus Amendments. Accordingly, there is no risk of invading any attorney-client privilege here, as communications between Wegman and Silberberg and/or his counsel in this regard are not privileged, nor would any of their communications with the HarborOne Bank regarding Silberberg's defenses be subject to a privilege. Further, facts concerning the relevant loan transaction are ***never privileged*** even if communicated by and to counsel. *Savoy v. Richard A. Carrier Trucking*, 178 F.R.D. 346, 349 (D. Mass. 1998) (the "shelter afforded by the privilege", "'only protects disclosure of communication; it does not protect disclosure of the underlying facts by those who communicated with the attorney'") (quoting, *Upjohn Co. v. United States*, 449 U.S. 383, 390, 66 L. Ed. 2d 584, 101 S. Ct. 677 (1981)).

Further, the mere fact that Wegman is ***not*** presently counsel to the Borrowers, militates in favor of denying the Motion and permitting SHS to obtain discovery from her because courts have often granted depositions of former counsel, such as Wegman. *In re Tyco Int'l Ltd.*, No. 02-md-1335-PB, 2007 U.S. Dist. LEXIS 66930, at *9 (D.N.H. Sep. 7, 2007) (permitting deposition of defendant's former attorney regarding information about "earlier proceedings and

3

investigations which are no longer active"); *Carey v. Textron, Inc.*, 224 F.R.D. 530, 531-32 (D. Mass. 2004). Therefore, Wegman's deposition is appropriate and important, and SHS should be permitted to proceed.

Moreover, Wegman's request for a protective order is illusory.  She requests that her deposition be postponed until further discovery is completed. What would be gained by postponing her deposition further is a mystery, but what is clear is that such delay cannot conceivably serve any legitimate purpose.  Moreover, the mere fact that other parties have indicated that they intend to produce documents, which they have not done to date, is immaterial to whether SHS is entitled to depose Attorney Wegman about the relevant, non-privileged information that she possesses.  In fact, even assuming that Attorney Wegman's former law firm, Rich May, P.C., does produce documents to Plaintiff, SHS is entitled to depose Attorney Wegman on those documents.  Thus, the Court should deny the Motion and permit SHS to obtain this highly relevant discovery from Attorney Wegman as expeditiously as possible.

## SUMMARY OF RELEVANT FACTUAL AND PROCEDURAL HISTORY

1. SHS commenced this action on July 23, 2021 by filing its Complaint against Silberberg.[2]  *See* ECF No. 1.

2. Through this action, Plaintiff seeks recovery of sums due and owing under a certain construction loan, with an original principal amount of $9,506,000.00 (the "Construction

---

[2] This case was originally filed in the U.S. District Court for the Southern District of New York.  By Order dated December 22, 2021, the Southern District transferred this matter to this Court upon Defendant's Motion to Change Venue.  *See* ECF No. 27.

Loan") and a certain term loan for $1,960,000.00 (the "Term Loan") (collectively, the "Loans").[3] *See* Dkt. No. 1., ¶ 12, 13.

3. The borrowers under the Loans are entities known as NESV Ice, LLC, NESV Swim, LLC, NESV Field, LLC, NESV Hotel, LLC, NESV Tennis, LLC, and NESV Land, LLC. *Id.* The purpose of these Loans was to, *inter alia*, finance the construction and development of an ice-skating rink as part of a planned development of the "New England Sports Village," which was contemplated to also include tennis courts, soccer fields, a swimming complex and a hotel, on approximately 139 acres of real property owned by the Borrowers and located in Attleboro, Massachusetts. *Id.*, ¶ 14.

4. As security for the Loans, defendant Silberberg executed three (3) guarantees: the Construction Loan Payment Guaranty, the Construction Loan Completion Guaranty, and the Term Loan Payment Guaranty. *Id.*, ¶ 17-20; 23-26.

5. The first events of default under the Loans occurred by at least March 2017. Specifically, but not exhaustively, the Borrowers failed to: (i) deposit certain amounts of money into escrow or otherwise pay down the principal balance of the Loans, (ii) maintain certain debt service ratios, (iii) provide certain financial disclosures and statements, (iv) pay down the amounts due and owing under the Loans, and (v) maintain the mortgaged properties free of liens and encumbrances. *Id.*, ¶ 46-49, 51.

6. By letters dated April 9, 2019 and April 10, 2019, HarborOne Bank notified Silberberg of these and other defaults under the Construction Loan and the Term Loan. HarborOne also informed the Borrowers and Mr. Silberberg that, pursuant to the terms of the

---

[3] Unless otherwise specified herein, Plaintiff relies upon the abbreviations and definitions set forth in the Complaint as if fully reiterated herein.

5

Loan Documents, it was entitled to receive interest at the default rate, i.e., 18% per annum, on the entire principal balance due and owing under the Loans commencing five (5) days after the initial events of default, i.e., March 1, 2017. *Id.*, ¶ 52-53. While HarborOne agreed to not demand payment of this interest at that time, the bank reserved the right to do so at a later date. *Id.*

7. The Borrowers also breached the Term Loan when it, *inter alia*, failed to pay the entire outstanding balance due on the Term Loan (including all outstanding principal, interest, and other charges under the accompanying note, Term Loan Agreement, and other Loan Documents) within five days of the Maturity Date of the Term Loan, June 24, 2019. *Id.*, ¶ 59.

8. The Borrowers and Silberberg were notified of this additional default under the Term Loan by, *inter alia*, Letter dated August 2, 2019. *Id.*, ¶ 61.

9. On or about July 24, 2020, the Borrowers, Silberberg, and Ajax entered into First Omnibus Amendments to the Construction Loan and Term Loan ("Omnibus Amendments"). *See* Exhibit N to the Complaint, collectively [ECF No. 1-14].

10. Attorney Wegman represented the Borrowers in connection with the Omnibus Amendments. *Id.*, ¶ 11-12. Wegman admits in her Motion that she and her law firm, Rich May, P.C. ("Rich May"), were retained by the Borrowers on February 25, 2020 to negotiate the Omnibus Amendments. *See* Motion, ¶ 4.

11. At the time of the filing of the Complaint, a total of $14,992,450.84, inclusive of principle, interest, and attorneys' fees and collections costs to date, remained outstanding under the Construction Loan, with per diem default interest accruing at $4,642.02 per day, and a total of $3,141,801.10, inclusive of principle, interest, and attorneys' fees and collections costs to

date, remained outstanding under the Term Loan, with per diem default interest accruing at $980.00 per day. *Id.*, ¶ 70, 72.

12. Defendant Silberberg filed his Answer to the Complaint on September 17, 2021. *See* ECF No. 15.

13. Silberberg's Affirmative Defenses included as follows:

**FIFTH AFFIRMATIVE DEFENSE**
**(Unconscionability or Duress)**

The agreements sued upon are unconscionable and/or were entered into under duress as a result of advice given by counsel representing Defendant and Borrowers in connection with the loan documents due to his financial interest in the Lender. Plaintiff, as alleged successor-in-interest to Lender stands in the shoes of Lender and is answerable for such conduct.

**SIXTH AFFIRMATIVE DEFENSE**
**(Unclean Hands)**

The agreements sued upon are unenforceable due to the bad faith conduct of counsel representing Defendant and Borrowers in connection with the loan documents due to his financial interest in the Lender. Plaintiff, as alleged successor-in-interest to Lender stands in the shoes of Lender and is answerable for such conduct.

**SEVENTH AFFIRMATIVE DEFENSE**
**(Wrongful Conduct)**

Plaintiff's claims are barred, in whole or in part, due to the negligent and wrongful conduct of Plaintiff and/or Lender, its alleged predecessor-in-interest.

ECF No. 15 (bold type in original).

14. On March 29, 2022, SHS served Wegman with a Subpoena to Testify at a Deposition in a Civil Action ("Subpoena"). *See* Exhibit B to Motion.

15. On April 12, 2022, Wegman filed the instant Motion to Quash the Subpoena, or alternatively for a protective order.

7

**ARGUMENT**

I.  **LEGAL STANDARD ON A MOTION TO QUASH**

A deposition subpoena issued under Fed. R. Civ. P. 45 "fall[s] within the scope of proper discovery under Fed. R. Civ. P. 26". *See In re New Eng. Compounding Pharmacy, Inc. Prods. Liab. Litig.*, MDL No. 13-2419-FDS, 2013 U.S. Dist. LEXIS 161652, 2013 WL 6058483, at *4 (D. Mass. Nov. 13, 2013); *Cates v. Zeltiq Asethetics, Inc.*, Civil Action No. 20-mc-91234-NMG, 2020 U.S. Dist. LEXIS 167158, 2020 WL 5517457, at *2 (D. Mass. Sept. 14, 2020) (setting out Rule 26(b)(2)(C)'s requirements in context of Rule 45 deposition subpoena). Rule 26(b)(1) provides that "[p]arties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case." Fed. R. Civ. P. 26(b)(1). The court has "broad discretion to manage discovery matters". *Heidelberg Ams., Inc. v. Tokyo Kikai Seisakusho, Ltd.*, 333 F.3d 38, 41 (1st Cir. 2003).

Motions to quash are governed by Federal Rule of Civil Procedure 45, which provides that a district court may only "quash or modify a subpoena that: . . . requires disclosure of privileged or other protected matter." Fed. R. Civ. P. 45(d)(3)(A)(iii); *see also Delaney v. Town of Abington*, 890 F.3d 1, 12 (1st Cir. 2018). The burden to demonstrate that a privilege applies "rests with the party resisting discovery", who here is Wegman. *FDIC v. Ogden Corp.*, 202 F.3d 454, 460 (1st Cir. 2000).

As demonstrated herein, Wegman's Motion falls well short of establishing her substantial burden here, namely because SHS ***does not seek testimony about any privileged matter whatsoever***. Rather, she is a percipient fact witness who has critical information regarding the Loans as well as the claims and defenses asserted in this case.

## II. DEPOSITIONS OF FORMER COUNSEL ARE PERMISSIBLE AND APPROPRIATE

Although depositions of attorneys are admittedly disfavored, they are not prohibited. *See Bogosian v. Woloohojian Realty Corp.*, 323 F.3d 55, 66 (1st Cir. 2003). The factors to be considered in permitting such a deposition are "whether (i) the subpoena was issued primarily for purposes of harassment, (ii) there are other viable means to obtain the same evidence, and (iii) to what extent the information sought is relevant, non-privileged and crucial to the moving party's case." *Id*.

Here, the deposition subpoena directed at Attorney Wegman was undisputedly not issued to harass her, nor is the information sought from her available from any other source. To the contrary, and particularly in light of the dearth of email communications produced to SHS surrounding the relevant loan transactions, it is likely that Attorney Wegman's testimony is a unique and highly relevant source of information concerning the loan transactions at issue in this case. Thus, there are no grounds upon which SHS should be precluded from taking her deposition in this case.

It is also of significance that Wegman no longer represents any of the relevant parties herein, but rather her representation of the Borrowers allegedly ended nearly one (1) year ago. *See* Wegman Affidavit, ¶ 7. Indeed, depositions of such former counsel are permissible, where counsel is merely a percipient witness to significant prior events at issue in a subsequent lawsuit. *See In re Tyco Int'l Ltd.*, No. 02-md-1335-PB, 2007 U.S. Dist. LEXIS 66930, at *9 (permitting deposition of defendant's former attorney regarding information about "earlier proceedings and investigations which are no longer active"); *ATS Prods. v. Champion Fiberglass, Inc.*, 309 F.R.D. 527, 532 (N.D. Cal. 2015) ("the subject matter of the deposition of opposing counsel is not his conduct in the pending case **but his percipient knowledge of the events surrounding a**

*prior concluded litigation*") (emphasis added) (internal quotation omitted); *see also, generally Carey*, 224 F.R.D. at 531-32 (permitting deposition of plaintiff's former counsel, where counsel was last person to have access to vehicle in products liability case).

Accordingly here, Wegman's deposition is necessary and appropriate.

### A. The Subpoena was Not Interposed for the Purposes of Harassment

Here, Wegman does not contend that the subpoena was issued for purposes of harassment, nor could she, as she was a percipient witness involved in negotiating a significant and critical agreement in order to attempt to resolve the Borrowers' and Silberberg's default under the Loans at issue in this case.

### B. There are No Other Viable Means to Obtain the Information Sought

In this regard, there are no other viable means to obtain this same evidence, as Wegman admits she was counsel to the Borrowers for approximately a year and four (4) months, from February 2020 to May 2021, i.e., precisely the time period relevant to the amendment to the loan documents. *See* Wegman Aff., ¶ 2, 7. Further, Wegman's attempts to downplay her involvement because she was an associate working under a partner at Rich May, Ms. Danielle Justo, is belied by the Omnibus Amendments themselves, which list Attorney Wegman as the ***sole notice counsel*** for the Borrowers in the Omnibus Amendments, demonstrating her significant involvement in the representation of the Borrowers in this transaction. Nevertheless, if Ms. Justo is an additional or more appropriate witness, this will be borne out at Wegman's deposition.

Further, to the extent that Wegman posits that her deposition is not appropriate because predecessor counsel, Steven Charlip, represented the Borrowers during the negotiation of the initial loan documents, is of no import as Attorney Charlip has agreed to be deposed on May 4,

2022. However, despite the fact of Mr. Charlip's prior involvement, including having evidently prepared a term sheet for the Omnibus Amendments as Wegman states in her Affidavit, this does not obviate the fact Wegman represented the Borrowers for that transaction and was privy to the negotiations of the actual resulting Omnibus Amendments over the following four months.

Moreover, for at least none (9) months Mr. Silberberg and is insiders have thus far stonewalled SHS' discovery efforts in this case and as a result, SHS has been precluded from obtaining much information relevant to the defenses being asserted herein from other sources. Thus, even though Attorney Wegman theorizes that other parties will produce documents to SHS, the simple fact is that they have not done so to date.[4]  Therefore, there is no basis to deny SHS its right to conduct a fulsome discovery into Silberberg's defenses in this case, and other relevant information which will likely lead to the discovery of other relevant documents and witnesses.

### C. Wegman's Deposition Testimony is Relevant, Not Privileged and Crucial to SHS' Case

#### i. Wegman's Deposition Testimony is Relevant and Crucial to this Case

It is settled that "relevancy must be broadly construed at the discovery stage such that information is discoverable if there is **any possibility it might be relevant** to the subject matter of the action". *Peoples v. Time Warner Cable, Inc.*, 2017 U.S. Dist. LEXIS 102364, 2017 WL 2836991, at *8 (D. Mass. 2017) (emphasis supplied). Despite Wegman's statements to the contrary, her testimony is relevant and significant to the claims and defenses raised in this case.

---

[4]  Rich May has not produced any documents to SHS in response it its subpoena. Rather, Rich May allegedly produced responsive documents to Mr. Silberberg's counsel herein because Mr. Silberberg has claimed attorney client privilege over Rich May's files. What privilege Mr. Silberberg has standing to assert over Rich May's files is bewildering in light of Attorney Wegman's averments that Rich May did not represent Mr. Silberberg personally in connection this these subject Loans.

11

To wit, Wegman has knowledge about a critical time period where the Lender worked in good faith with the Borrowers, and their counsel, Wegman. This is directly contrary to Silberberg's Seventh Affirmative Defense, alleging wrongful conduct on behalf of the Lender.

Secondarily, despite Wegman's self-serving and conclusory statements that she was not the counsel referenced by Silberberg in his Fifth and Sixth Affirmative Defenses of unconscionability, duress, and unclean hands, as counsel to the Borrowers, she would undoubtedly have knowledge of Silberberg's and his private counsel's discussions with Wegman's clients, the Borrowers, and representations made to the Lender in this regard, at least at the time of the negotiation of the Omnibus Amendments when she was retained for over four (4) months. Moreover, even the absence of discussions regarding unconscionability and duress Silberberg allegedly underwent would be telling about the propriety of Silberberg's defenses that he has raised herein. In other words, Wegman's testimony will be helpful in establishing the good faith and arm's length nature of the Lender's relationship with the Borrowers and Silberberg, vitiating his defenses to this case.

Wegman also likely possesses critical information regarding the Borrowers' multiple defaults necessitating the Amendments, including incorporation of the ASSVL Loan into the Omnibus Amendments, and the nature and extent of the discussions with the Lender regarding these provisions of the Omnibus Amendments. Thus, her testimony is relevant and critical to Plaintiff's response thereto.

  **ii. Plaintiff Does Not Seek Privileged Testimony from Wegman**

Contrary to Wegman's claims, there is no risk of disclosing attorney-client privileged communications as SHS does ***not*** seek any privileged testimony. Rather, the attorney-client privilege will only attach "(1) [w]here legal advice of any kind is sought (2) from a professional

legal adviser in [her] capacity as such, (3) the communications relating to that purpose, (4) made in confidence (5) by the client, (6) are at his instance permanently protected (7) from disclosure by himself or by the legal adviser, (8) except the protection [may] be waived." *In re Grand Jury Subpoena (Mr. S.)*, 662 F.3d 65, 71 (1st Cir. 2011) (quotation and citation omitted). "***A failure to satisfy any one of the enumerated elements defeats the claim of privilege***." *Id*. (emphasis supplied)

Further, because the privilege runs contrary to full disclosure of relevant information, it is to be construed narrowly. *See Colonial Gas Co. v. Aetna Cas. & Sur. Co.*, 139 F.R.D. 269, 273 (D. Mass. 1991); *Clair v. Clair*, 464 Mass. 205, 215 (2013). Also, the party seeking to invoke the attorney-client privilege bears the burden of showing not only that the privilege applies, but also that it has not been waived. *FDIC v. Ogden Corp.*, 202 F.3d 454, 460 (1st Cir. 2000).

First, Wegman, as the attorney, who represented the Borrowers, **not Silberberg**, is not the holder of any ostensible privilege, as same belongs to the client, the Borrowers who are debtors in bankruptcy, and she has not made any representation that the Borrowers object to her deposition. *See Savoy*, 178 F.R.D. at 351 ("The privilege applies only if …the asserted holder of the privilege is or sought to become a client").

Second, it must be noted that Wegman's generic assertion of a risk of testimony pertaining to privileged topics is entirely insufficient, as privilege must be specifically and directly alleged. *See In re Grand Jury Subpoena*, 662 F.3d 65, 71 (1st Cir. 2011) ("a blanket assertion of privilege is generally insufficient"). Indeed, Wegman acknowledges that SHS has subpoenaed her former law firm, Rich May for "all **non-privileged** documents and communications related to the Loans". Motion, p. 6 (emphasis supplied). However, Wegman's argument that she should not be compelled to testify regarding these admittedly non-privileged

13

materials underlying her representation is a bridge too far and is contrary to the established principles of broad discovery.

Additionally, SHS does not seek testimony regarding privileged communications between her and the Borrowers. Rather, inquiries pertaining to the circumstances leading to the Omnibus Amendments, communications with HarborOne Bank, Wegman's clients' adversary in the transaction, as well as Silberberg and/or his counsel, whose interests were also divergent, as Wegman points out in her affidavit, Silberberg required private counsel with respect to his interests in executing the Omnibus Amendments and Guarantees. *See* Wegman Aff., ¶ 3.

Flatly, it is settled law that the "shelter afforded by the privilege", "'only protects disclosure of communication; it does not protect disclosure of the underlying facts by those who communicated with the attorney'". *Savoy*, 178 F.R.D. at 349 (quoting, *Upjohn*, 449 U.S. at 390; *see also See Chambers v. Gold Medal Bakery, Inc.*, 464 Mass. 383, 392 (2013) (the privilege does not immunize underlying facts from discovery simply because a client disclosed those facts to an attorney) (citing *Upjohn*, 449 U.S. at 395-96). Thus, the aforementioned information and areas of inquiry are readily discoverable from Wegman and her deposition should proceed.

      iii.    **Assuming *Arguendo* Privilege is Implicated, it is Waived Due to Silberberg's Affirmative Defenses**

Further, "a litigant may implicitly waive the attorney-client privilege, at least partly, by injecting certain claims or defenses into a case.'" *Clair v. Clair*, 464 Mass. 205, 219 (2013) (quoting, *Darius v. City of Boston*, 433 Mass. 274, 284, 741 N.E.2d 52 (2001)). Indeed, "an advice of counsel defense", as ostensibly raised by Silberberg here, is "'a paradigmatic example' of the role of fairness in the waiver analysis". *Columbia Data Prods. v. Autonomy Corp. Ltd.*, No. 11-12077-NMG, 2012 U.S. Dist. LEXIS 175920, at *50 (D. Mass. Dec. 12, 2012) (quoting, *XYZ Corp. v. United States (In re Keeper of the Records)*, 348 F.3d 16, 24 (1st Cir. 2003). In

14

this regard, "[i]mplying a subject matter waiver in such a case ensures fairness because it disables litigants from using the attorney-client privilege as both a sword and a shield. Were the law otherwise, the client could selectively disclose fragments helpful to its cause, entomb other (unhelpful) fragments, and in that way kidnap the truth-seeking process"'. *Id.*, quoting *In re Keeper of the Records*, 348 F. 3d at 24.

Thus, even assuming *arguendo* the discovery sought is privileged – it is not – any such privilege is waived by Silberberg's own affirmative defenses alleged in this case, including his defenses of unconscionability, duress, unclean hands, and wrongful conduct on the part of his own counsel. *See Sax v. Sax*, 136 F.R.D. 542, 544 (D. Mass. 1991) ("Defendant has raised an issue of his lack of understanding of the Memorandum Agreement in circumstances in which perhaps the only person who would have explained the agreement to him was his attorney. His assertion of the counterclaims in this case was an implicit waiver of the privilege as to the subject matter of the agreement and the circumstances leading to its execution."). Again, other than Wegman's vague comments pertaining to potential privilege invasions, it is unclear how her representation of the Borrowers, not Silberberg, would invade any privilege her clients hold. Nevertheless, to the extent that she has knowledge of any duress, unconscionable or wrongful conduct of the Lender imposed upon Silberberg and/or the Borrowers, any privilege over such subject matters is waived.

Therefore, for the above reasons, this Court should deny the portion of Wegman's motion to quash the Subpoena and compel her to testify at her deposition.

### III.  LEGAL STANDARD ON OBTAINING A PROTECTIVE ORDER

Alternatively, Wegman seeks a protective order to permit her deposition at a later date following other discovery, and to restrict inquiries to non-privileged matters.  As stated herein, these are not issues of concern and thus a protective order is not warranted.

Nevertheless, Federal Rule of Civil Procedure 26(c) "allows a party to seek and obtain a protective order based upon a showing of good cause". Fed. R. Civ. P. 26(c).  As the party seeking a protective order, Wegman bears the burden of demonstrating good cause.  *Hardy v. UPS Ground Freight, Inc.*, No. 17-30162-MGM, 2018 U.S. Dist. LEXIS 216499, 2018 WL 6832083, at *2 (D. Mass. Dec. 27, 2018); *see also Gill v. Gulfstream Park Racing Ass'n., Inc.*, 399 F.3d 391, 402 (1st Cir. 2005) (good cause is flexible standard requiring "'individualized balancing of the many interests that may be present") (citation omitted).

Similarly to a motion to quash, the motion court has "broad discretion" under Rule 26(c) "to decide when a protective order is appropriate and what degree of protection is required." *Seattle Times Co. v. Rhinehart*, 467 U.S. 20, 36, 104 S. Ct. 2199, 81 L. Ed. 2d 17 (1984); *see also IDS Prop. Cas. Ins. Co. v. Gov't Emp. Ins. Co., Inc.*, 985 F.3d 41, 50 (1st Cir. 2021) ("[e]ven if district courts provide limited or no reasoning for their orders," they possess "broad discretion" in "design[ing] protective orders").

Here, as Wegman has not demonstrated a particularized need for a protective order, other than her generic and conclusory claims of privilege, a protective order is not warranted.  Indeed, certainly now having interposed the instant Motion, significant additional discovery will be completed before Wegman's deposition is completed, including production of records from her former law firm, Rich May, who was also subpoenaed, and the deposition of Attorney Steven Charlip, who represented the Borrowers in negotiation of the initial Loan Documents, which is

16

scheduled for May 4, 2022. Also, Plaintiff's pending document requests and interrogatories to Defendant are due on April 25, 2022, and numerous other subpoenas to third-parties are now overdue and production is ongoing. Thus, there will be substantial discovery completed likely before there is a decision on this Motion. Further, the present discovery deadline of June 30, 2022 is fast approaching, and further delay of Wegman's deposition will endanger this deadline.

Moreover, as stated herein, SHS does not seek testimony regarding privileged communications. Thus, Wegman's request for a limiting instruction is not warranted. Rather, as with all depositions, should Wegman or her counsel believe a particular question is privileged, they can object on a question-by-question basis during her examination. A prospective protective order is simply not appropriate, particularly where Wegman has failed to demonstrate any specified privilege.

## **CONCLUSION**

For the above stated reasons, Plaintiff SHS ACK, LLC respectfully requests that this Court DENY Non-Party Sarah Wegman, Esq.'s Motion to Quash the Subpoena and alternatively, for a Protective Order, in its entirety, and GRANT such other and further relief as it deems just and necessary.

<table>
<tr><td>Dated: April 26, 2022</td><td>Respectfully submitted,<br><br>SHS ACK, LLC<br><br>By its attorneys,<br><br>/s/ *Thomas H. Curran*<br>Thomas H. Curran, BBO# 550759<br>tcurran@curranantonelli.com<br>Peter Antonelli, BBO# 661526<br>pantonelli@curranantonelli.com<br>Christopher Marks BBO# 705612<br>cmarks@curranantonelli.com<br>William Gagas, BBO# 682779<br>wgagas@curranantonelli.com<br>Curran Antonelli, LLP<br>Ten Post Office Square, Suite 800 South<br>Boston, MA 02109<br>Telephone: (617) 207-8670<br>Fax: (617) 850-9001</td></tr>
</table>

## **CERTIFICATE OF SERVICE**

I, Christopher Marks, hereby certify that on this 26th day of April 2022, a copy of the foregoing was filed electronically. Notice of this will be sent by e-mail to all parties by operation of the Court's electronic filing system. Parties may access this filing through the Court's system.

/s/ *Christopher Marks*
Christopher Marks